No. 12-60905

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT
_____

**ANTHONY GIBSON**
*Plaintiff-Appellee*

**VERSUS**

**JEFFREY KILPATRICK, in his individual capacity**
*Defendant-Appellant*

_____

## INTERLOCUTORY APPEAL FROM THE UNITED STATES DISTRICT
## COURT FOR THE NORTHERN DISTRICT OF MISSISSIPPI
_____

**BRIEF OF APPELLANT**

_____

Gary E. Friedman, M.B. No. 5532
LaToya C. Merritt, M.B. No. 100054
G. Todd Butler, M.B. No. 102907
Phelps Dunbar LLP
4270 I-55 North
Jackson, Mississippi 39211-6391
P. O. Box 16114
Jackson, Mississippi 39236-6114
Telephone: (601) 352-2300
Facsimile: (601) 360-9777

**ORAL ARGUMENT REQUESTED**

## CERTIFICATE OF INTERESTED PARTIES

The undersigned counsel of record certifies that the following listed persons have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1.     Anthony Gibson, plaintiff-appellee;

2.     Waide & Associates, P.A., Jim D. Waide, III, Rachel Pierce Waide, and Ronnie Lee Woodruff, counsel for plaintiff-appellee;

3.     Jeffrey Kilpatrick, defendant-appellant;

4.     City of Drew, Mississippi, defendant;

5.     Phelps Dunbar, LLP, Gary E. Friedman, LaToya C. Merritt, and G. Todd Butler, counsel for defendant-appellee and defendant;

6.     Chief Judge Michael P. Mills, United States District Court for the Northern District of Mississippi; and

7.     Mississippi Municipal Liability Service Company.

SO CERTIFIED, this the 11th day of January, 2013.


*/s/ G. Todd Butler*
G. Todd Butler

## STATEMENT REGARDING ORAL ARGUMENT

Anthony Gibson is a former police chief who accuses Mayor Jeffery Kilpatrick of employment retaliation in violation of the First Amendment. In particular, Gibson alleges that Mayor Kilpatrick began disciplining him nearly three years after he initiated an investigation into Mayor Kilpatrick's use of the city gas card. This interlocutory appeal is a challenge to the district court's denial of qualified immunity to Mayor Kilpatrick.

A threshold issue involves the application of *Garcetti v. Ceballos*, 547 U.S. 410 (2006), which held that the First Amendment does not protect speech made as part of an employee's job. Since the decision was handed down in 2006, other courts have applied *Garcetti* in similar law enforcement contexts, but this Court has not yet had an occasion to do so.

Because this appeal raises an important issue of constitutional law, and because this Court may wish to consider closely the decisions from other courts that mark the path to reversal, Mayor Kilpatrick requests oral argument under Fed. R. App. P. 34.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PARTIES ........................................................ ii

STATEMENT REGARDING ORAL ARGUMENT ............................................ iii

TABLE OF AUTHORITIES ..................................................................................v

INTRODUCTION ..................................................................................................1

STATEMENT OF JURISDICTION.........................................................................2

STATEMENT OF THE ISSUES..............................................................................3

STATEMENT OF THE CASE...................................................................................3

STATEMENT OF THE FACTS ...............................................................................6

SUMMARY OF THE ARGUMENT .....................................................................10

ARGUMENT .........................................................................................................12

I.     Chief Gibson's conduct is unprotected..........................................................13

II.    In the alternative, Mayor Kilpatrick is entitled to qualified
       immunity. ....................................................................................................18

III.   In the further alternative, Chief Gibson suffered no adverse
       employment actions attributable to Mayor Kilpatrick, or, at a
       minimum, it was not "clearly established" as such. .....................................19

IV.    In the final alternative, there was insufficient causation
       evidence to deny Mayor Kilpatrick's summary judgment
       motion. ........................................................................................................24

CONCLUSION .....................................................................................................27

CERTIFICATE OF COMPLIANCE......................................................................29

CERTIFICATE OF SERVICE ..............................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Ackel v. Nat'l Communications, Inc.*,
  339 F.3d 376 (5th Cir. 2003) ..............................................................21

*Ashcroft v. al-Kidd*,
  131 S.Ct. 2074 (2011) ........................................................................19

*Bellard v. Gautreaux*,
  675 F.3d 454 (5th Cir. 2012) ..............................................................25

*Breaux v. City of Garland*,
  205 F.3d 150 (5th Cir. 2000) ..........................................12, 20, 21, 23

*Burlington N. & Santa Fe Railway Co. v. White*,
  548 U.S. 53 (2006) ..............................................................................21

*Butler v. Shinseki*,
  2011 WL 3419619 (E.D. La. 2011) ....................................................23

*Cantrell v. City of Murphy*,
  666 F.3d 911 (5th Cir. 2012) ..............................................................18

*Carroll v. City of Dallas, Tex.*,
  2005 WL 3543347 (N.D. Tex. 2005) ..................................................24

*Carthon v. Johnson Controls, Inc.*,
  2003 WL 25736054 (W.D. La. 2003)...................................................22

*Charles v. Grief*,
  522 F.3d 508 (5th Cir. 2008) ..............................................................13

*Clancey v. City of College Station*,
  2011 WL 335148 (S.D. Tex. 2011) ....................................................21

*Clark Cnty. School Dist. v. Breeden*,
  532 U.S. 268 (2001)............................................................................12

*Club Retro, LLC v. Hilton*,
  568 F.3d 181 (5th Cir. 2009) ..............................................................18

*Davis v. McKinney*,
    518 F.3d 304 (5th Cir. 2008) ...............................................................15

*Depree v. Saunders*,
    588 F.3d 282 (5th Cir. 2009) ...............................................12, 20, 23

*Despres v. City of San Antonio*,
    2005 WL 2708666 (W.D. Tex. 2005) ..................................................22

*Embry v. Callahan Eye Found. Hosp.*,
    147 Fed. App'x 819 (11th Cir. 2005) ..................................................24

*Flores v. City of Palacios*,
    381 F.3d 391 (5th Cir. 2004) .................................................................2

*Garcetti v. Ceballos*,
    547 U.S. 410 (2006) ...........................................................10, 13, 17

*Gee v. Principi*,
    289 F.3d 342 (5th Cir. 2002) ...............................................................24

*Green v. Adm'r of Tulane Educ. Fund*,
    284 F.3d 642 (5th Cir. 2002) .......................................................11, 21

*Harrison v. Corr. Corp. of Am.*,
    476 Fed. App'x 40 (5th Cir. 2012) ......................................................22

*Helton v. Clements*,
    787 F.2d 1016 (5th Cir. 1986) ...............................................................5

*Huppert v. City of Pittsburg*,
    574 F.3d 696 (9th Cir. 2009) .....................................11, 16, 17, 19

*Kovacic v. Villarreal*,
    628 F.3d 209 (5th Cir. 2010) ...............................................................24

*Mattern v. Eastman Kodak Co.*,
    104 F.3d 702 (5th Cir. 1997) .......................................................22, 23

*McCoy v. City of Shreveport*,
    492 F.3d 551 (5th Cir. 2000) .......................................................11, 21

*Morgan v. Swanson*,
   659 F.3d 359 (5th Cir. 2011) (en banc) .......................................................11, 19

*O'Connor v. City of Newark*,
   440 F.3d 125 (3d Cir. 2006) ...............................................................................20

*Pearson v. Callahan*,
   555 U.S. 223 (2009)............................................................................................18

*Pegram v. Honeywell, Inc.*,
   361 F.3d 272 (5th Cir. 2004) ..............................................................................24

*Preston v. Tex. Dep''t of Family & Protective Servs.*,
   222 F. App'x 353 (5th Cir. 2007) ........................................................................22

*Proctor v. United Parcel Serv.*,
   502 F.3d 1200 (10th Cir. 2007) ..........................................................................27

*Raggs v. Miss. Power & Light Co.*,
   278 F.3d 463 (5th Cir. 2002) ........................................................................12, 26

*Roberson v. Alltel Information Servs.*,
   373 F.3d 647 (5th Cir. 2004) ..............................................................................26

*S.W.S. Erectors, Inc. v. Infax, Inc.*,
   72 F.3d 489 (5th Cir. 1996) ................................................................................26

*Stewart v. Miss. Transp. Comm'n*,
   586 F.3d 321 (5th Cir. 2009) ..............................................................................23

*Thomas v. Tex. Dep't of Criminal Justice*,
   220 F.3d 389 (5th Cir. 2000) ..............................................................................22

*Watts v. City of Jackson*,
   827 F.Supp.2d 724 (S.D. Miss. 2011) .........................................................*passim*

*Wheeler v. Miller*,
   168 F.3d 241 (5th Cir. 1999) ..............................................................................25

*Wynn v. Dep't of Human Servs.*,
   2011 WL 3423142 (S.D. Miss. 2011)..................................................................22

*Zaffuto v. Hammond*,
   308 F.3d 485 (5th Cir. 2002) ...............................................................................23

## FEDERAL STATUTES

28 U.S.C. § 1331 ......................................................................................................2

## STATE STATUTES

Miss. Code 7-5-1 ....................................................................................................16

Miss. Code § 21-21-1 ......................................................................................6, 10,13

Miss. Code § 45-6-3(c) ................................................................................6, 10, 13, 14

## FEDERAL RULES

Fed. R. Civ. P. 54(b) ...............................................................................................5

## CONSTITUTIONAL PROVISIONS

First Amendment.............................................................................................*passim*

## OTHER AUTHORITIES

DEA Mission Statement, http://www.justice.gov/dea/about/mission.shtml ...........16

FBI Mission Statement, http://www.fbi.gov/about-us/quick-facts.........................16

MS AG Op., Reynolds (Sept. 23, 2005), 2005 WL 3298170....................................6

State Auditor Website, http://www.osa.state.ms.us/about-us.htm ..........................16

# INTRODUCTION

Anthony Gibson became police chief of the City of Drew in August 2006. R. at 505. The city's mayor, Jeffery Kilpatrick, preferred another applicant. R. at 698. The mayor only gets to vote if there is a tie, however, and the board of aldermen chose Gibson. R. at 507.

Shortly after becoming chief, Gibson initiated an investigation into Mayor Kilpatrick's use of the city gas card. R. at 600-02. He contacted representatives from several law enforcement agencies, some of whom he had worked with previously, and ordered employees within his department to assist in the investigation. R. at 608-11, 640. Ultimately, Mayor Kilpatrick agreed to pay back approximately $3,000.00 after negotiations with the State Auditor's office. R. at 810-11.

Though there is no useable evidence that Mayor Kilpatrick had personal knowledge about Gibson's involvement in the investigation, Gibson claims that his report resulted in Mayor Kilpatrick issuing him several reprimands and a paid suspension starting three years later. *See* r. at 517. A lawsuit against Mayor Kilpatrick in his individual capacity was filed in December 2010, r. at 12-16, and the district court denied his request for qualified immunity at summary judgment. R. at 1236-44.

The district court's determination was wrong and should now be reversed. Police Chief Gibson's investigation was conducted in connection with his law enforcement duties and thus was unprotected under the First Amendment, or, at a minimum, First Amendment protection was not "clearly established" for purposes of qualified immunity. Gibson also cannot show that the discipline he attributes to Mayor Kilpatrick rises to the level of adverse employment actions or that a causal connection exists between the investigation and his discipline. Consequently, dismissal of Mayor Kilpatrick from this lawsuit is warranted for several independent reasons.

## STATEMENT OF JURISDICTION

The district court had original jurisdiction over this section 1983 case under 28 U.S.C. § 1331, and this Court has appellate jurisdiction over the district court's denial of Mayor Kilpatrick's request for qualified immunity. *See, e.g., Flores v. City of Palacios*, 381 F.3d 391, 393 (5th Cir. 2004) ("The denial of a motion for summary judgment based on qualified immunity is immediately appealable under the collateral order doctrine to the extent that it turns on an issue of law.") (internal quotation marks and citation omitted). A notice of appeal was timely filed on November 19, 2012. R. at 1244.

## STATEMENT OF THE ISSUES

1.      Was the initiation of an investigation into Mayor Kilpatrick by Police Chief Gibson, and Gibson's subsequent participation in the investigation, protected under the First Amendment?

2.      If so, was Chief Gibson's conduct "clearly established" as constitutionally protected at the time Mayor Kilpatrick is alleged to have retaliated against Gibson?

3.      In the alternative, do any of the alleged retaliatory acts attributed to Mayor Kilpatrick rise to the level of adverse employment decisions, or, at a minimum, was it "clearly established" that they did?

4.      In the further alternative, was there sufficient evidence to establish a causal connection between Gibson's investigation and the alleged retaliatory acts attributed to Mayor Kilpatrick that began three years later?

## STATEMENT OF THE CASE

In December 2010, while still serving as police chief, Gibson brought claims of First Amendment retaliation, malicious interference with employment, and intentional infliction of emotional distress against Mayor Kilpatrick in his individual capacity.  R. at 12-16.  Gibson amended his complaint in November 2011 to add a First Amendment claim against the City of Drew following the board of aldermen's vote to end his employment.  R. at 222-28.

Mayor Kilpatrick and the city moved for summary judgment after discovery ended. R. at 327-29. Both argued that Gibson had not engaged in protected activity and that there was insufficient evidence to support causation. R. at 420-42, 1160-1185. Mayor Kilpatrick added that, as to the First Amendment claim against him, the alleged retaliatory acts were not adverse employment decisions. R. at 420-42, 1160-1185.

The district court granted in part and denied in part summary judgment. R. at 1204-1215. The state law claims against Mayor Kilpatrick were dismissed on the basis that Gibson failed to comply with the notice requirements of the Mississippi Tort Claims Act, but the First Amendment claims against both Mayor Kilpatrick and the city were allowed to go forward. R. at 1204-1215.

With respect to the First Amendment claim against Mayor Kilpatrick, it was held that the discipline attributed to Kilpatrick constituted adverse employment actions for which fact questions on causation existed, but the district court "reserved judgment" on whether Gibson's report to the other law enforcement agencies was constitutionally protected and whether Mayor Kilpatrick was entitled to qualified immunity. R. at 1209-13. With respect to the First Amendment claim against the City of Drew, the district court again "reserved judgment" on the constitutional issue but found sufficient summary judgment evidence of causation. R. at 1212.

Mayor Kilpatrick moved for reconsideration under Fed. R. Civ. P. 54(b) following the summary judgment opinion. R. at 1217-20. In his request, Kilpatrick advanced this Court's decision in *Helton v. Clements*, 787 F.2d 1016 (5th Cir. 1986), which rejected a district court's refusal to decide the issue of qualified immunity in favor of carrying it "along with the trial of the case on the merits." R. at 1217-20. The district court agreed that *Helton* controlled. R. at 1236.

Though the district court agreed that a decision on qualified immunity was required, it did not decide the issue in Mayor Kilpatrick's favor. R. at 1236-44. Rather than finding Chief Gibson's conduct unprotected, the district court held that it fell within the purview of the First Amendment. R. at 1236-44. Specifically, the district court held that, since Chief Gibson did not report the alleged misconduct of Mayor Kilpatrick "inside the workplace" (i.e. to the board of aldermen), and instead made the report to other law enforcement agencies, the conduct was constitutionally protected. *See* r. at 1239.

The parties filed competing notices of appeal, which stayed all proceedings in the district court. R. at 1246. Mayor Kilpatrick appealed the district court's summary judgment and reconsideration orders on November 19, 2012; Gibson noticed a cross-appeal on November 30, 2012. *Compare* r. at 1244 *with* r. at 1249.

Mayor Kilpatrick has asked this Court to dismiss Gibson's cross-appeal for lack of jurisdiction, but, to date, no order on the motion has been entered.

## STATEMENT OF THE FACTS

Anthony Gibson applied for the position of police chief with the City of Drew during the summer of 2006. *See* r. at 505. Drew's mayor, Jeffrey Kilpatrick, supported another candidate named Dwight Lucas. R. at 698. The board rejected Mayor Kilpatrick's recommendation and appointed Gibson. R. at 507.

By this appointment, Gibson became the municipality's chief law enforcement officer. R. at 515. All law enforcement officers in Mississippi have as their "primary responsibility . . . the prevention and detection of crime, the apprehension of criminals and the enforcement of the criminal and traffic laws[,]" and chiefs have the additional responsibility of "control and supervision over all police officers employed by [the] municipality." Miss. Code §§ 45-6-3(c), 21-21-1. Mayors and boards of aldermen are forbidden by state law from interfering in the day-to-day operations of a chief's police department. *See, e.g.,* MS AG Op., Reynolds (Sept. 23, 2005), 2005 WL 3298170.

**Investigation of Mayor Kilpatrick.** Within the first four months of becoming chief, Gibson initiated an investigation concerning the mayor who opposed his appointment. R. at 600-02. Chief Gibson contacted representatives of various agencies, specifically representatives of the State Auditor, the Attorney

General, the Federal Bureau of Investigation, and the Drug Enforcement Agency. R. at 640. Chief Gibson alleged that Mayor Kilpatrick was inappropriately using the city gas card for his own personal use.[1] R. at 640.

Chief Gibson's allegations concerning the gas culminated in he and Karen Swain, an investigator from the State Auditor's office, agreeing to work together to monitor Mayor Kilpatrick's activities. R. at 605-08. Chief Gibson took a leadership role in the probe by ordering two dispatchers to make a log each time Mayor Kilpatrick sought the gas card and ordering one of his police officers to monitor Mayor Kilpatrick's conduct following receipt of the card. R. at 608-610. Chief Gibson and Investigator Swain also instructed the city clerk to monitor receipts from the city's gas provider for the purpose of matching the receipts with the information recorded on the log. R. at 610-12. Ultimately, Mayor Kilpatrick repaid approximately $3,000.00 for unauthorized use of the city gas card. R. at 810-11.

**Chief Gibson's lawsuit against Mayor Kilpatrick.** In December 2010, over four years after the investigation, Chief Gibson filed a First Amendment action against Mayor Kilpatrick in his individual capacity. R. at 12-16. At the

---

[1]     In his deposition, Chief Gibson also alleged for the very first time that, during one of the meetings about the gas, while a DEA representative was present, he mentioned a rumor he had been told by a police officer that Mayor Kilpatrick was involved in illegal drug activity. R. at 649-50. Such an allegation was not included in his complaint, *see* r. at 13, there is no record evidence that Mayor Kilpatrick has ever been implicated in any drug activity, *see* r. at 652, and Chief Gibson's testimony made clear that there is no evidence Mayor Kilpatrick had knowledge about Gibson's mention of the drug activity rumor in any event. *See* r. at 651-55. Regardless, even if Gibson were trying to base his First Amendment claim on the drug activity rumor, it would fail for all the reasons outlined in the Argument portion of this brief.

summary judgment stage, Chief Gibson attributed several reprimands and a paid suspension to Mayor Kilpatrick, which are set forth as follows in chronological fashion:

    * **June 8, 2009**: Mayor Kilpatrick issued Chief Gibson a written reprimand for insubordination. R. at 852. The reprimand concerned an incident where Mayor Kilpatrick instructed Chief Gibson to put Captain Lucas back to work. R. at 852, 854. Chief Gibson refused to do so without a directive from the board of aldermen. R. at 854. After the reprimand, Chief Gibson claims that Mayor Kilpatrick told him "the write-up [was] nothing" and not "to worry about it." R. at 854.

    * **February 4, 2010**: Mayor Kilpatrick wrote Chief Gibson two reprimands. R. at 855-56. One concerned an incident two days earlier where Gibson left the City of Drew without authorization and assisted a neighboring police department in a 17-hour domestic violence stand-off. R. at 855. The second concerned an incident on February 1, 2010 where Gibson made a false statement that four high school students were using drugs on the campus of Drew High School. R. at 856. At his deposition, Gibson admitted that he went outside of his jurisdiction on February 2, 2010 without permission from the mayor or board of aldermen, r. at 517-19, and testified that he could not recall the incident involving the high school students. R. 519-20. It was Gibson's testimony that neither reprimand was actually issued to him and that he was viewing both for the first time at his deposition. R. at 518, 520.

    * **June 14, 2010**: During his employment, Chief Gibson answered to the mayor and board of aldermen. R. at 515-16. On June 13, 2010, Gibson received a notice from the mayor to be in the mayor's office for "an urgent meeting" the following morning at 9:00 a.m. R. at 523, 857. Chief Gibson admits that he did not show up to the meeting at 9:00 a.m. as he was instructed, r. at 523, and Mayor Kilpatrick accordingly issued a reprimand for insubordination on June 14, 2010. *See* r. at 858. Also on that date, Chief Gibson was issued a paid suspension for allowing citizens to enter a community center being renovated prior to its completion. R. at 553-56, 860. Gibson

previously had asked Mayor Kilpatrick for a key to the center, but the mayor refused.  R. at 534-35, 539-40.  Gibson also was issued a reprimand for insubordination the following day for failing to turn in his equipment as he had been instructed to do at the time of his suspension.  R. at 541-42, 950.  At his deposition, Chief Gibson could not recall receiving the reprimand about the equipment.  R. at 551.

*     **October 7, 2010**: Chief Gibson wrote an officer up for failing to respond to a call and told the mayor and board of aldermen that the officer heard the call but simply failed to take action.  R. at 582-83.  In turn, Mayor Kilpatrick requested the log book as proof.  R. at 957.  Two reprimands were issued for Gibson's failure to retrieve the log as requested and for providing false information to the mayor and board of aldermen.  R. at 583 & 957-58.  It was Gibson's testimony that the reprimands were not actually issued to him and that he was viewing both for the first time at his deposition.  R. at 583-86.

**Chief Gibson's amended complaint.**  In September 2011, after citizens had complained about the temperament of the police department and Chief Gibson's visibility within the city, *see, e.g.,* r. at 909-914, Gibson was given a corrective action plan and asked to submit a response to the board concerning what methods he planned to take to address the issues involved.  R. at 1065.  Instead of providing a plan of action, however, Chief Gibson responded on two occasions by stating that the "directive[s] [were] already being met."  *See* r. at 1066-1072, 1075-1076.  Gibson was informed that this was not the type of response the city was looking for.  *See* r. at 1073, 1074.

Chief Gibson also received a written reprimand on October 3, 2011.  R. at 1103.  The reprimand involved instructions Gibson had received that the police department was not to receive overtime.  R. at 1103.  Though Gibson had been so

instructed, he nonetheless held a staff meeting that caused the city to have to pay the department substantial overtime.  *See* r. at 1103.  It was explained in the reprimand that Gibson had "blatantly disregard[ed]" the overtime instructions.  R. at 1103.

Eventually enough was enough, and Chief Gibson's employment with the City of Drew ended on October 5, 2012, when the board voted to terminate.  R. at 1104.  Gibson subsequently amended his lawsuit to add the City of Drew as a party, claiming specifically that the board was angry about being deposed as a part of Gibson's lawsuit against the mayor and that the board had accordingly violated his right of free speech and right to address grievances under the First Amendment.  R. at 330-36.  Gibson's termination is not before this Court, however, since this interlocutory appeal involves only Gibson's claim against Mayor Kilpatrick in his individual capacity.  R. at 1244.

## SUMMARY OF THE ARGUMENT

1.    Chief Gibson's conduct was unprotected under the First Amendment. *See Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006).  As the top law enforcement official of the City of Drew, it was Chief Gibson's responsibility to fight crime within the city's borders and supervise members of his department.  *See* Miss. Code §§ 45-6-3(c), 21-21-1.  He did both when he initiated, supervised, and participated in an investigation into Mayor Kilpatrick's alleged misuse of the city

gas card.  Other courts have held that even more attenuated conduct falls outside the First Amendment's protection.  *See Huppert v. City of Pittsburg*, 574 F.3d 696 (9th Cir. 2009); *Watts v. City of Jackson*, 827 F.Supp.2d 724 (S.D. Miss. 2011).

2.     In the alternative, Mayor Kilpatrick was, at bottom, entitled to qualified immunity.   Even if Chief Gibson's conduct was constitutionally protected, it was not "clearly established" as such at the time Gibson received the discipline he alleges to be retaliatory.  "Clearly established" rights are those that are "beyond debate."  *See Morgan v. Swanson*, 659 F.3d 359 (5th Cir. 2011) (en banc).  No case on point would have put Mayor Kilpatrick on notice that Chief Gibson's investigation was protected, and, in fact, the most similar cases suggest that Gibson's investigation was unprotected.  *See Huppert*, 574 F.3d 696; *Watts*, 827 F.Supp.2d 724.

3.     In the further alternative, none of the discipline attributed to Mayor Kilpatrick constitutes adverse employment actions in this circuit.  Outside the Title VII retaliation context, this Court has held that adverse action means "ultimate employment decisions."  *See McCoy v. City of Shreveport*, 492 F.3d 551 (5th Cir. 2000).  Cases from this circuit hold that reprimands and paid suspensions are not "ultimate employment decisions," so, at the very least, the discipline Gibson received was not "clearly established" as unlawful.  *See, e.g., Green v.*

*Administrators of Tulane Educ. Fund*, 284 F.3d 642, 657-58 (5th Cir. 2002); *Breaux v. City of Garland*, 205 F.3d 150 (5th Cir. 2000).

4.      In the final alternative, Chief Gibson's First Amendment claim against Mayor Kilpatrick fails on causation grounds.  It is well settled that a necessary condition of a retaliation claim is that the decision-maker have knowledge of the protected activity at issue.  *See Clark Cnty. School Dist. v. Breeden*, 532 U.S. 268 (2001).  It also is well settled that the causal nexus between protected activity and adverse action weakens as time passes.  *See Raggs v. Miss. Power & Light Co.*, 278 F.3d 463 (5th Cir. 2002).  Because there is insufficient evidence that Mayor Kilpatrick had personal knowledge of Chief Gibson's alleged protected activity, there is an insufficient link between the alleged retaliatory acts and the alleged protected activity that came three years before.

## ARGUMENT

Chief Gibson's retaliation claim is not actionable.  In addition to demonstrating that conduct is "protected" under the First Amendment, a plaintiff must show that he "suffered an 'adverse employment decision'" and that "the protected speech motivated the defendant's conduct."  *See Depree v. Saunders*, 588 F.3d 282, 286-87 (5th Cir. 2009).  Gibson fails each of these requirements.

# I.    Chief Gibson's conduct is unprotected.

"[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). This principle, which presents a de novo question of law, resolves the instant appeal. *See Charles v. Grief*, 522 F.3d 508, 513 n. 17 (5th Cir. 2008).

Anthony Gibson served as the chief law enforcement officer for the City of Drew, Mississippi. R. at 515. By state statute, his primary responsibilities were to detect and prevent crime within the city limits. *See* Miss. Code § 45-6-3(c). He also had the added duty, as the city's top law enforcement officer, of supervising all employees and divisions within the police department. *Id*. at § 21-21-1. Chief Gibson's initiation of an investigation into Mayor Kilpatrick's use of the city gas card, and his subsequent participation in that investigation, encompassed all of his duties of crime detection, crime prevention, and supervision. *See* r. at 600-71.

*Crime detection.* Chief Gibson initiated an investigation into Mayor Kilpatrick's use of the city gas card by contacting several law enforcement agencies. R. at 600-02, 605. Some of the representatives from the agencies Gibson contacted, including the FBI and DEA representatives, had worked with Gibson previously in his law enforcement capacity. R. at 634-35, 641. Chief

Gibson's contacting of other law enforcement agencies over his belief that Mayor Kilpatrick was engaged in criminal activity is consistent with his duty of detecting crime. *See* Miss. Code § 45-6-3(c). Gibson was in a position to witness Mayor Kilpatrick's alleged misuse of the gas card only because Kilpatrick "had to come to the police department to get the gas card." *See* r. at 1205.

*Crime prevention.* The resulting investigation, and Chief Gibson's participation in it, also is consistent with his duty of preventing crime. *See* Miss. Code § 45-6-3(c). Chief Gibson's position throughout this litigation has been that he reported Mayor Kilpatrick to stop him from stealing from the tax-paying citizens of the City of Drew. *See, e.g.*, r. at 13. After the report, Chief Gibson worked with Karen Swain from the State Auditor's office to monitor Mayor Kilpatrick's activities, which ultimately led to Mayor Kilpatrick repaying approximately $3,000.00. *See* r. at 810-11. There is no allegation that Mayor Kilpatrick misused the city gas card following the penalty imposed.

*Supervision of others within police department.* The record evidence is clear that Chief Gibson played an integral part in the investigation of Mayor Kilpatrick. *See* r. at 605-08. It is undisputed that Chief Gibson ordered two of his dispatchers to make a log each time Mayor Kilpatrick sought the gas card. R. at 608-10. It also is undisputed that Chief Gibson ordered one of his police officers to monitor Mayor Kilpatrick's conduct following receipt of the card. R. at 608-10. It is

further undisputed that Chief Gibson and Investigator Swain jointly instructed the city clerk to monitor receipts from the city's gas provider for the purpose of matching the receipts with the information recorded on the log. R. at 610-12. There is no evidence that anyone played a more substantial role than Gibson, and, in the district court, Gibson essentially conceded that his participation in the investigation was unprotected. *See* r. at 468 (attempting to draw a distinction between the initial report and his subsequent participation).

In light of this factual background, the district court's finding of constitutional protection was error. The district court's decision hinged primarily on *Davis v. McKinney*, 518 F.3d 304, 313 (5th Cir. 2008), which held, in part, that a plaintiff's complaints to two external agencies were protected under the First Amendment. R. at 1239. *Davis*, however, does not control here.

Significantly, the nature of the employment in *Davis* and the nature of Gibson's employment in this case are worlds apart. In *Davis*, the plaintiff was an auditor who complained to the FBI and EEOC about her public employer's treatment of violations of the internet-use policy. 518 F.3d at 307-10. This Court found the reports protected after explaining that the FBI and EEOC were "external, unrelated entities" to her employer, the University of Texas. *Id*. at 313. Quite differently, the entities Chief Gibson contacted in this case – the State Auditor, the Attorney General, the Federal Bureau of Investigation, and the Drug Enforcement

Agency – are very much "related" to the police department.[2]   *See, e.g., Watts v. City of Jackson*, 827 F.Supp.2d 724, 730 (S.D. Miss. 2011) (finding police department "related" to the FBI, even though FBI is an external entity).   The interrelationship is demonstrated best by the fact that Chief Gibson previously had worked in his capacity as a law enforcement officer with at least two of the agency representatives he contacted, r. 634-35, 641, and by the leadership role Chief Gibson played in the subsequent investigation following the initial report.   *E.g.,* r. at 608-12.

Decisions from other courts are instructive on the proper outcome.   In *Huppert v. City of Pittsburg*, 574 F.3d 696, 702-09 (9th Cir. 2009), for example, it was held that a police officer's report to the FBI concerning police corruption, as well as the officer's cooperation in a subsequent investigation, fell outside the ambit of the First Amendment.   Like here, state law dictated that the plaintiff-officer's "official duties include[d] investigating corruption, so as to 'prevent the commission of crime, and assist in its detection.'"   *See Huppert*, 574 F.3d at 707 (citing *Christal v. Police Comm'n of City and Cnty. of San Francisco*, 92 P.2d 416,

---

[2]   To be sure, all of the agencies Chief Gibson contacted were, like the police department, law enforcement in nature.   *See* State Auditor Website, http://www.osa.state.ms.us/about-us.htm ("The Office is widely regarded as the definitive authority in matters pertaining to the use of public funds . . . ."); Miss. Code 7-5-1 (Mississippi Attorney General is "the chief legal officer and advisor for the state, both civil and criminal[.]"); FBI Mission Statement, http://www.fbi.gov/about-us/quick-facts ("As an intelligence-driven and a threat-focused national security organization with both intelligence and law enforcement responsibilities, the mission of the FBI is to protect and defend the United States against terrorist and foreign intelligence threats to uphold and enforce the criminal laws of the United States, and to provide leadership and criminal justice services to federal, state, municipal, and international agencies and partners."); and DEA Mission Statement, http://www.justice.gov/dea/about/mission.shtml (detailing agency's numerous law enforcement responsibilities).

419 (1939)) (brackets and ellipses omitted).  Similarly, in *Watts*, it was held that a police officer's report to the FBI that the mayor was involved in criminal activity was unprotected.  827 F.Supp.2d at 729-32.  Just as in *Huppert*, the *Watts* court highlighted state law, which in Mississippi requires police officers to detect and prevent crime.  *Id.*

What's more, *Huppert* and *Watts* involved facts even more attenuated than those presented here.  Where the plaintiffs in those cases were merely officers who participated in FBI investigations on their personal time, *see Huppert*, 574 F.3d at 707; *Watts*, 827 F.Supp.2d at 730, Chief Gibson was *the* chief law enforcement official of the City of Drew and not only participated himself while acting as chief but also ordered subordinate officers, and even other city officials outside of the police department, to assist in the investigation of Mayor Kilpatrick.  R. at 515, 605-12.  Such conduct would have been impossible *but for* his official position as police chief.

Chief Gibson's conduct simply does not implicate the First Amendment.  Justice Kennedy wrote in *Garcetti* that, "[w]hen a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedom."  *Garcetti*, 547 U.S. at 418.  That warning applies here and warrants reversal of the district court's order.

**II.    In the alternative, Mayor Kilpatrick is entitled to qualified immunity.**

Courts may find that a governmental official is entitled to qualified immunity without tackling the underlying question of constitutionality. That is the teaching of *Pearson v. Callahan*, 555 U.S. 223, 241-42 (2009). When this route is chosen, the inquiry is whether the official "'violate[d] clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id*. at 231 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Mayor Kilpatrick is, at the very least, entitled to qualified immunity because it was not "clearly established" that Chief Gibson's investigation was constitutionally protected. "Clearly established" rights are those where the contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *See Club Retro, LLC v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009) (ellipses and citations omitted). No authorities relied on by the district court, or presented to the district court by Gibson, involve similar law enforcement circumstances that could suffice as notice that Gibson engaged in constitutionally protected activity. *See, e.g., Cantrell v. City of Murphy*, 666 F.3d 911, 920 (5th Cir. 2012) (granting qualified immunity where party did not "cite any cases involving sufficiently similar situations").

The opposite is instead true. Mayor Kilpatrick cited the *Watts* decision to the district court, r. at 1165, which likely constitutes the most factually analogous

case from a court within this circuit. *Watts* found a police officer's external report unprotected, yet the district court rejected the reasoning of that case in favor of a case having nothing to do with law enforcement. *See* r. at 1239. At bottom, the district court should have found that the question presented was not "beyond debate." *See Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2083 (2011).

This Court's precedent demands as much. In *Morgan v. Swanson*, 659 F.3d 359, 372 (5th Cir. 2011) (en banc), it was explained that, to deny qualified immunity, courts "must be able to point to controlling authority – or a "robust 'consensus of persuasive authority'" – that defines the contours of the right in question with a high degree of particularity." It was further explained that, "[w]here no controlling authority specifically prohibits a defendant's conduct, and when the federal circuit courts are split on the issue, the law cannot be said to be clearly established." *Morgan*, 659 F.3d at 372. Since there is no factually similar authority from this Court, and since the factually similar *Huppert* decision from a sister circuit counsels against a constitutional violation, *Morgan* dictates a grant of qualified immunity to Mayor Kilpatrick.

**III.    In the further alternative, Chief Gibson suffered no adverse employment actions attributable to Mayor Kilpatrick, or, at a minimum, it was not "clearly established" as such.**

The district court held that the discipline Chief Gibson attributed to Mayor Kilpatrick constituted adverse employment actions. R. at 1209-10. If reached, that

determination should be reversed.    Whether Gibson "alleged any adverse employment actions . . . is a question of law reviewed de novo."  *See Breaux v. City of Garland*, 205 F.3d 150, 161 (5th Cir. 2000).

As an initial matter, Gibson should not be allowed to rely on many of the alleged adverse actions he advanced in his district court summary judgment opposition, particularly his February 4, 2010, June 15, 2010, October 7, 2010, and October 3, 2011 reprimands.  *See O'Connor v. City of Newark*, 440 F.3d 125, 126-28 (3d Cir. 2006) (acknowledging that "discrete employment actions" must be analyzed separately).  Gibson testified that he had not actually received the first three reprimands and instead that he was viewing them for the first time during his deposition.  R. at 518, 520, 551, 583-86.  Likewise, with respect to the fourth reprimand, it came after Gibson's lawsuit against Mayor Kilpatrick was initiated.  R. at 1103.  It is self-evident that these discrete actions are not a part of this lawsuit, since it would have been impossible for Gibson to file suit over things he did not even know about.

Nonetheless, even if that were not the case, none of the reprimands nor the paid suspension are actionable for other reasons.  The governing standard is addressed first, and the application of that standard follows.

*Proper standard.*  Though the adverse employment action standard for First Amendment claims has not been definitively articulated in this circuit, *see Depree*,

588 F.3d at 288, prior precedent suggests that an "ultimate employment decision" standard applies. In *Burlington N. & Santa Fe Railway Co. v. White*, 548 U.S. 53, 57 (2006), the Supreme Court provided a likely would "dissuade a reasonable worker" standard for Title VII retaliation claims, but, post *White*, this Court has refused to extend that standard beyond the Title VII retaliation context. *See McCoy v. City of Shreveport*, 492 F.3d 551, 559-60 (5th Cir. 2000) (holding that an "ultimate employment decision" is still required for Title VII discrimination claims). As a result, district courts within this circuit properly have continued to require "ultimate employment decisions" to support First Amendment retaliation claims. *See, e.g., Clancey v. City of College Station*, 2011 WL 335148, *5 (S.D. Tex. 2011).

*Application.* There also is admittedly grey area on whether a reprimand is an "ultimate employment decision." The district court called Mayor Kilpatrick's assertion that Chief Gibson's reprimands were not cognizable "frivolous," relying on a passage from this Court's decision in *Breaux*. R. at 1209 (citing 205 F.3d at 157). But the argument was not properly labeled frivolous.

Countless cases from this circuit implicitly reject *Breaux* by expressly holding that reprimands are not "ultimate employment decisions." *See Ackel v. Nat'l Communications, Inc.*, 339 F.3d 376, 380-85 (5th Cir. 2003) (holding that reprimands are not "ultimate employment decisions"); *Green v. Administrators of*

*Tulane Educ. Fund*, 284 F.3d 642, 657-58 (5th Cir. 2002) (holding that "disciplinary actions in the form of reprimands[] do not constitute ultimate employment decisions"); *Thomas v. Tex. Dep't of Criminal Justice*, 220 F.3d 389, 394 n.2 (5th Cir. 2000) (holding "receiving formal discipline" is not an "ultimate employment decision"); *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 708 (5th Cir. 1997) (documented reprimands not "ultimate employment decisions"); *Preston v. Tex. Dep''t of Family & Protective Servs.*, 222 F. App'x 353, 358 (5th Cir. 2007) ("Written admonishments do not rise to the level of ultimate employment actions."); *Dutton v. U. healthcare System, L.L.C.*, 136 Fed. App'x 596, 601 (5th Cir. 2005) (holding "letter of reprimand" was not "ultimate employment decision"). And district courts from every state within this circuit have made that determination too. *E.g., Wynn v. Dep't of Human Servs.*, 2011 WL 3423142, *3 (S.D. Miss. 2011); *Despres v. City of San Antonio*, 2005 WL 2708666, *5 (W.D. Tex. 2005); *Carthon v. Johnson Controls, Inc.*, 2003 WL 25736054, *6 (W.D. La. 2003).

In fact, even under *White*'s lower likely would "dissuade a reasonable worker" standard, this Court has held that a reprimand is not an adverse employment action. *See Harrison v. Corrections Corp. of Am.*, 476 Fed. App'x 40, 44-45 (5th Cir. 2012). And again, district courts within this circuit have held

the same thing. *See, e.g., Butler v. Shinseki*, 2011 WL 3419619, *7 (E.D. La. 2011).

It should be held here that Chief Gibson's reprimands were not ultimate employment decisions. Reprimands are, "at most[,] 'tangential' to future decisions that might be ultimate employment decisions." *See Mattern*, 104 F.3d at 708. Chief Gibson's reprimands are accordingly not in and of themselves actionable, or, at the very least, Mayor Kilpatrick should be entitled to qualified immunity since the conflicting cases do not place the issue "beyond debate." *See Depree*, 588 F.3d at 287-88 (granting qualified immunity on adverse employment action confusion).

It also should be held that Gibson's paid suspension was not an ultimate employment decision. The district court did not address Chief Gibson's suspension, *see* r. at 1209-10, but, in *Breaux*, this Court held that a police officer placed on paid administrative leave did not suffer an adverse employment action. *See* 205 F.3d at 158. What's more, as with reprimands, even under *White*'s more relaxed likely would "dissuade a reasonable worker" standard in the Title VII retaliation context, this Court has held a paid leave unactionable. *See Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 332 (5th Cir. 2009). And relatedly, this Court has even questioned whether a 240 hour *unpaid* suspension would constitute an ultimate employment decision. *See Zaffuto v. Hammond*, 308 F.3d 485, 493-94

(5th Cir. 2002).[3]   So because Chief Gibson's suspension does not provide an "objective showing of a loss in compensation, duties, or benefits[,]" it was not an "ultimate employment decision," or certainly not a "clearly established" one.  *See Pegram v. Honeywell, Inc.*, 361 F.3d 272, 283 (5th Cir. 2004).

## IV.   In the final alternative, there was insufficient causation evidence to deny Mayor Kilpatrick's summary judgment motion.

Mayor Kilpatrick requested summary judgment on the alternate ground that Chief Gibson could not demonstrate that his alleged protected activity motivated the alleged adverse actions.   R. at 430-31.   The district court rejected this argument, but this Court considers de novo whether summary judgment should have been granted.   *See, e.g., Kovacic v. Villarreal*, 628 F.3d 209, 211 (5th Cir. 2010).

The starting point is knowledge.  It is a necessary precondition that, for an employment action to be based on unlawful retaliation, the alleged retaliator must first possess knowledge of the protected activity at issue.   *See, e.g., Gee v. Principi*, 289 F.3d 342, 346 (5th Cir. 2002).   Chief Gibson testified at his deposition that he never told Mayor Kilpatrick about his complaints to the State Auditor, and Mayor Kilpatrick's testimony was not inconsistent.   R. at 383, 697.

---

[3]   In a similar vein, other courts have expressly held that short-term, unpaid suspensions are *de minimis* and thus not ultimate employment decisions.  *See, e.g., Embry v. Callahan Eye Found. Hosp.*, 147 Fed. App'x 819, 829 (11th Cir. 2005); *Carroll v. City of Dallas, Tex.*, 2005 WL 3543347, *4 (N.D. Tex. 2005).

Because Chief Gibson admitted that he did not speak with the mayor himself, he attempted to establish that Mayor Kilpatrick gained knowledge elsewhere. Multiple contentions were advanced, none of which should have been accepted. *See* r. at 470-71.

First, Gibson relied on Mayor Kilpatrick's testimony about having heard "rumors" that Gibson was one of three people who could have made the gas complaint to demonstrate knowledge. R. at 470. This reliance was unfounded, however, because this Court has held that "[e]vidence of knowledge of rumors . . . 'is not significantly probative to defeat summary judgment.'" *See Wheeler v. Miller*, 168 F.3d 241, 248 (5th Cir. 1999) (citation omitted).

Second, Gibson relied on his own post-deposition affidavit, which stated as follows: the vice-mayor "told me that he had told Kilpatrick that I was the person who reported him to the State Auditor." R. at 470, 851. Aside from the hearsay laden nature of the statement, it does not suffice for additional reasons. *See Bellard v. Gautreaux*, 675 F.3d 454, 461 (5th Cir. 2012) (explaining that inadmissible hearsay may not defeat summary judgment). The vice-mayor provided a deposition in this case and expressly stated that he had not told Mayor Kilpatrick about Gibson's contact with the State Auditor. R. at 1148. More importantly, however, Gibson himself testified at his own deposition that he had no "personal knowledge of [the vice-mayor] telling anyone that [Gibson] had

complained to the [S]tate [A]uditor's office[.]" R. at 383. This testimony trumps, since a self-serving affidavit attached to a response brief may not be used to contradict earlier deposition testimony. *See, e.g., S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495-96 (5th Cir. 1996).

A related problem for Gibson is that the gap between Gibson's investigation and the alleged retaliatory action is too attenuated, even if he could prove that Mayor Kilpatrick had knowledge. Gibson's testimony was that the investigation into Mayor Kilpatrick began shortly after he became police chief in 2006. *See* r. at 600-02. The actions about which Gibson now complains began in June 2009, nearly three years later. *See* r. at 453.

The three year time lapse between these events negates any inference of a causal connection. The more time that passes between the alleged protected activity and the alleged adverse action, the less likely that the temporal relationship will support a causal connection. *See, e.g., Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471-72 (5th Cir. 2002). This Court has held that summary judgment can issue for lack of causation even where the lapse is only five months. *See, e.g., Roberson v. Alltel Information Servs.*, 373 F.3d 647, 655 (5th Cir. 2004). The lapse here plainly is much greater.

Nor can causation be established for the single reprimand that came after the filing of Gibson's lawsuit against Mayor Kilpatrick. *See* r. at 1103. Even if it were

accepted that Kilpatrick's knowledge accrued upon filing, it is undeniable that Gibson received reprimands both before and after he sued Mayor Kilpatrick. *See* r. at 453-60. No inference of causation should be drawn from such consistent behavior. *See, e.g., Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1210 n.5 (10th Cir. 2007).[4]

To summarize, Chief Gibson did not carry his summary judgment burden on causation. He did not demonstrate that Mayor Kilpatrick had personal knowledge of his alleged protected activity and did not demonstrate sufficient proximity in any event. If reached, the district court's denial of summary should be overturned on causation grounds.

## CONCLUSION

Police Chief Gibson instigated and then led an investigation into the mayor who opposed his appointment – all under the guise of protecting the tax paying citizens of his city from criminal activity. Regardless of the motive, however, detecting and preventing crime is precisely what Gibson's job as police chief required of him. This is the simplest reason why his First Amendment lawsuit against Mayor Kilpatrick fails.

But it also fails for other reasons. At worst, Mayor Kilpatrick was entitled to qualified immunity because this circuit's cases do not "clearly establish" that

---

[4]    Plus, as explained on page 20, the October 3, 2011 reprimand is not even an action that should be taken into account because it was not, and could not, have been included in Gibson's complaint.

Gibson's conduct was protected or that the reprimands and suspension Gibson received were adverse employment decisions.  Gibson has causation problems too, since there is no evidence that Mayor Kilpatrick had knowledge of his alleged protected activity and since the adverse actions he attributes to Mayor Kilpatrick came so long after the alleged protected activity.

The bottom line is that the district court's summary judgment ruling was wrong on many fronts.  This Court should analyze the several paths to reversal and dismiss Mayor Kilpatrick under one of them.

Dated: January 11th, 2013.

Respectfully submitted,

BY:  /s/ G. Todd Butler
     Gary E. Friedman, M.B. No. 5532
     LaToya C. Merritt, M.B. No.
     G. Todd Butler, M.B. No. 102907
     Phelps Dunbar LLP
     4270 I-55 North
     Jackson, Mississippi  39211-6391
     P. O. Box 16114
     Jackson, Mississippi 39236-6114
     Telephone: (601) 352-2300
     Facsimile: (601) 360-9777

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS

This brief complies with the type-volume limitation of Fed R. App. P. 32(a)(7)(B) because, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), it contains 6,295.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in proportionally-spaced typeface, including serifs, using Word, in Times New Roman 14-point font, except for the footnotes, which are in proportionally-spaced typeface, including serifs, using Word in Times New Roman 12-point font.

Respectfully submitted,

BY:  */s/ G. Todd Butler*
G. Todd Butler, M.B. No. 102907

Dated: Jan. 13, 2013

## CERTIFICATE OF SERVICE

I, G. Todd Butler, do hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following counsel of record:

> Jim D. Waide, III., Esquire
> WAIDE & ASSOCIATES, P.A.
> 332 North Spring Street
> Tupelo MS 38804
> (662) 842-7324
> waide@waidelaw.com

**ATTORNEYS FOR PLAINTIFF/APPELLEE**

THIS, the 11th day of January, 2013.

> */s/ G. Todd Butler*
> G. Todd Butler