# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

## CASE NO. 12-60905

### ANTHONY GIBSON
*Plaintiff-Appellee/Cross-Appellant*

### VERSUS

### JEFFREY KILPATRICK, in his individual capacity
*Defendant-Appellant/Cross-Appellee*

---

## BRIEF OF APPELLEE/CROSS-APPELLANT

---

## APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## GREENVILLE DIVISION

**Chief Judge Michael P. Mills, United States District Court**

**JIM WAIDE**
**MISSISSIPPI BAR NO. 6857**

**RACHEL PIERCE WAIDE**
**MISSISSIPPI BAR NO. 100420**

**RON L. WOODRUFF**
**MISSISSIPPI BAR NO. 100391**

**Waide & Associates, P.A.**
**332 North Spring Street**
**Post Office Box 1357**
**Tupelo, MS 38802**
**Telephone: (662) 842-7324**
**Facsimile: (662) 842-8056**
**Email: waide@waidelaw.com**

**Attorneys for Appellee/Cross-Appellant**

# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

## CASE NO. 12-60905

### ANTHONY GIBSON
*Plaintiff-Appellee/Cross-Appellant*

### VERSUS

### JEFFREY KILPATRICK, in his individual capacity
*Defendant-Appellant/Cross-Appellee*

### CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record for Appellee/Cross-Appellant certifies that the following listed persons have an interest in the outcome of this case. These representations are made in order that the Judges of this Court may evaluate possible disqualifications or recusal pursuant to Rule 13.6.1 of the United States Court of Appeals for the Fifth Circuit.

1.    Anthony Gibson, Appellee/Cross-Appellant;

2.    Jim Waide, Counsel for Appellee/Cross-Appellant;

3.    Rachel Pierce Waide, Counsel for Appellee/Cross-Appellant;

4.    Ron L. Woodruff, Counsel for Appellee/Cross-Appellant;

5.    Waide & Associates, P.A., Counsel for Appellee/Cross-Appellant;

6.    Jeffrey Kilpatrick, Appellant/Cross-Appellee;

7.    Gary E. Friedman, Counsel for Appellant/Cross-Appellee;

8.    LaToya C. Merritt, Counsel for Appellant/Cross-Appellee;

9.    Gregory Todd Butler, Counsel for Appellant/Cross-Appellee; and

10.    Phelps Dunbar, LLP, Counsel for Appellant/Cross-Appellee.

/s/ Jim Waide
JIM WAIDE

## **<u>STATEMENT REGARDING ORAL ARGUMENT</u>**

Because no novel issues are presented, oral argument is not warranted.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS . . . . . . . . . . . . . . . . . . . . . . . . . i-ii

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . iii

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv-v

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi-viii

STATEMENT OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ix

STATEMENT OF THE ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . x

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

SUMMARY OF THE ARGUMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

ARGUMENT I
     GIBSON'S REPORTS TO OUTSIDE LAW ENFORCEMENT
     OFFICERS WERE "CITIZEN SPEECH," CLEARLY PROTECTED
     BY THE FIRST AMENDMENT.  THUS, KILPATRICK WAS NOT
     ENTITLED TO QUALIFIED IMMUNITY. . . . . . . . . . . . . . . . . . . . . . . . 7

ARGUMENT II
     EXCEPT FOR DEFENDANT'S CLAIM THAT GIBSON'S SPEECH
     WAS NOT FIRST AMENDMENT PROTECTED CITIZEN SPEECH,
     KILPATRICK'S REMAINING ARGUMENTS ARE NON-
     APPEALABLE FACTUAL DISPUTES. . . . . . . . . . . . . . . . . . . . . . . . . . 10

CROSS-APPEAL
> THE DISTRICT COURT ERRONEOUSLY DISMISSED
> GIBSON'S STATE LAW CLAIM FOR FAILURE TO
> COMPLY WITH THE MISSISSIPPI TORT CLAIMS
> ACT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

## TABLE OF AUTHORITIES

<u>CASES:</u>

*Adentis Pharma S.A. v. Hospira, Inc.,* 637 F.3d 1341 (C.A. Fed. 2011) . . . . . . . ix

*Bolton v. Forrest County, Miss.*, 2012 WL 6600147 (S.D. Miss. 2012) . . . . . . . . 16

*Breaux v. City of Garland*, 205 F.3d 150 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . 13

*Burlington Northern & Sante Fe Ry. Co. v. White*, 548 U.S. 53 (2006) . . . . . 12-13

*Charles v. Grief*, 522 F.3d 508 (5th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Chief Ray Reynolds*, Office of the Attorney General, State of Mississippi,
Opinion No. 2005-0480, 2005 WL 3298170 (September 23, 2005) . . . . . . . . . . . 3

*Clanton v. DeSoto County Sheriff's Dept.*, 963 So.2d 560
(Miss. App. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Colston v. Barnhart*, 146 F.3d 282 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . 10

*Connick v. Myers*, 461 U.S. 138 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-9

*Davis v. McKinney*, 518 F.3d 304 (5th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . 9

*Foraker v. Chaffinch*, 501 F.3d 231 (3rd Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . 9

*Freeman v. Gore*, 483 F.3d 404 (5th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Freitag v. Ayers*, 468 F.3d 528 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Garcetti v. Ceballos*, 547 U.S. 410 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7, 9

*Gibson v. Estes*, 2007 WL 405043 (Miss. 2007) . . . . . . . . . . . . . . . . . . . . . . 17-18

*Gibson v. Estes*, 2008 WL 3884393 (N.D. Miss. 2008) . . . . . . . . . . . . . . . . . 17-18

*Gibson v. Estes*, 338 Fed.Appx. 476, 477 (5th Cir. 2009) . . . . . . . . . . . . . . . . . 18

*Gracyalny v. Westinghouse Electric Corp.*, 723 F.2d 1311 (7th Cir. 1983) . . . . . 10

*In re Quarles*, 158 U.S. 532 (1895) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Irby v. Citizens National Bank of Meridian*, 121 So. 2d 118 (1960) . . . . . . . . . . 17

*Keenan v. Tejeda*, 290 F.3d 252 (5th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Levens v. Campbell*, 733 So.2d 753 (Miss. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Lightbourne v. Dugger*, 829 F.2d 1012 (11th Cir. 1987) . . . . . . . . . . . . . . . . . . . . 8

*Lofton v. City of West Point*, *Miss.,* 2012 WL 1135862 (N.D. Miss. 2012) . . . . . 16

*McBride Consulting Service, LLC v. Waste Management of Miss., Inc.*,
949 So. 2d 52 (Miss. Ct. App. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Mitchell v. Forsyth*, 472 U.S. 511 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Morrison v. Mississippi Enterprise for Technology,* 798 So.2d 567
(Miss. App. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Perkins v. Wal-Mart Stores, Inc.*, 46 So.3d 839 (Miss. App. 2010) . . . . . . . . . . . 16

*Petta v. Rivera*, 143 F.3d 895 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Pickering v. Board of Education of Township High School Dist. 205*,
391 U.S. 563, (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Pierce v. Texas Dept. of Criminal Justice, Inst. Div.*, 37 F.3d 1146
(5th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Rankin v. McPherson*, 483 U.S. 378 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Shaw v. Burchfield*, 481 So. 2d 247 (Miss. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Thomas v. City of Blanchard*, 548 F.3d 1317 (5th Cir. 2008) . . . . . . . . . . . . . . . . . 9

*Zumwalt v. Jones County Bd. of Supervisors*, 19 So.3d 672 (Miss. 2009) . . . . . . 15

OTHER CITATIONS:

18 U.S.C. § 4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

28 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ix

28 U.S.C. § 1343 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ix

28 U.S.C. § 1367 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ix

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ix

Federal Rule of Appellate Procedure 4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ix

Mississippi Code Annotated § 11-46-5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 15

Mississippi Code Annotated § 11-46-11 . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 14-15

Mississippi Code Annotated § 21-21-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

## STATEMENT OF JURISDICTION

The district court had civil rights jurisdiction under 28 U.S.C. § 1343 and federal question jurisdiction under 28 U.S.C. § 1331, for a cause of action authorized by 42 U.S.C. § 1983. The district court had supplemental jurisdiction over Plaintiff-Appellee Anthony Gibson's state law claims under 28 U.S.C. § 1367.

The cross-appeal is authorized by Federal Rule of Appellate Procedure 4(a)(3), which provides that, "If one party timely files a notice of appeal, any other party may file a notice of appeal..." A cross-appeal may be filed only "when a party seeks to enlarge its own rights under the judgment or to lessen the rights of its adversary under the judgment." *Adentis Pharma S.A. v. Hospira, Inc.,* 637 F.3d 1341, 1343 (C.A. Fed. 2011). The cross-appeal is appropriate because Appellee Gibson seeks to enlarge his rights under the district court's judgment, by expanding the court's judgment to permit Gibson's supplemental state law claim to proceed.

## <u>STATEMENT OF THE ISSUES</u>

1. Whether a police chief's reporting crimes to an outside law enforcement agency is citizen speech protected by the First Amendment?

2. Whether the Mississippi Tort Claims Act requires a notice of claim as a prerequisite to filing a suit claiming malicious interference  with employment against a public official in his individual capacity?

## STATEMENT OF THE CASE

On December 1, 2010, Plaintiff-Appellee Anthony Gibson (hereinafter "Gibson") filed this suit against Defendant-Appellant Jeffrey Kilpatrick ("hereinafter "Kilpatrick") individually, alleging both a violation of the First Amendment and a state law claim for intentional interference with employment. [R: 512-516]. On November 28, 2011, Gibson filed his supplemental complaint, adding the City of Drew as a defendant, and alleging that the City of Drew had violated his First Amendment rights, by discharging him in retaliation for filing his suit. [R:222-256]. Following discovery, both Defendants moved for summary judgment. [R: 327-449]. Gibson responded to those dispositive motions on July 5, 2012, attaching voluminous evidentiary materials. [R: 450-1119].

On January 11, 2013, the district court dismissed Gibson's state law claims for failing to file a notice of claim allegedly required by Mississippi Code Annotated § 11-46-11. [R: 1214]. The district court denied the motion for summary judgment on Gibson's claims for retaliation for exercise of his First Amendment rights. [R: 1213]. The district court reserved judgment on the claim of "qualified immunity" by Kilpatrick for violation of First Amendment rights. [R: 1213]. Kilpatrick filed a motion for reconsideration, [R: 1217-1220], which the district court denied on November 16, 2012, by holding Gibson is not entitled to qualified immunity. [R:

1236-1243].

Kilpatrick timely appealed to this Court from the district court's denial of qualified immunity. [R: 1244]. Gibson filed a cross-appeal from the district court's grant of summary judgment in favor of Kilpatrick on the state law claim of malicious interference with employment. [R: 1249-1250].

## STATEMENT OF THE FACTS

In August 2006, Defendant City of Drew, Mississippi hired Anthony Gibson as Chief of Police. [R: 505].

According to Alderman John Smith, any complaints about Gibson's performance as police chief were "pretty much [from] the criminals. Law-abiding people don't seem to have a problem with him." [R: 753].

Gibson saw Mayor Kilpatrick filling up a city police car with gas, and then observed Kilpatrick taking the city car on personal trips. [R: 624-625]. Gibson reported this misuse of the city vehicle for personal purposes to the Mississippi Attorney General's office. [R: 601]. Following a State Auditor's investigation, Kilpatrick was ordered to repay approximately $3,000.00 in city funds. [R: 834-835; 614].

Gibson also reported information he had received that Kilpatrick was involved in illegal drug activity to the Federal Bureau of Investigation, the Drug Enforcement

Agency, the United States Marshal's Office, and the Mississippi Bureau of Narcotics.[1] [R: 650].

Despite Mississippi law's requirement that the police chief be responsible for supervising police officers and running the police department,[2] Mayor Kilpatrick began to intervene in the affairs of the police department, by placing reprimands in Gibson's personnel file, only some of which he actually disclosed to Gibson. Discovery revealed the following reprimands had been entered into Gibson's personnel file:

(1) Warning of June 8, 2009, for disobeying Kilpatrick's order to put police officer Dwight Lucas back to work. [R: 852].

(2) Reprimand of February 2, 2010, for assisting the City of Rosedale Police Department. [R: 855].

(3) Reprimand of February 4, 2010, for assisting a neighboring police department in a 17-hour domestic standoff. [R: 855]. This reprimand was entered in the file, but not disclosed to Gibson. [R: 518-520].

(4) Reprimand of February 4, 2010, accusing Gibson of making a false

---

[1] At his deposition, Kilpatrick testified that he had heard "rumors" about Gibson's reporting him for drug activity. [R: 697-698].

[2] *See Chief Ray Reynolds*, Office of the Attorney General, State of Mississippi, Opinion No. 2005-0480, 2005 WL 3298170 (September 23, 2005) (citing Miss. Code Ann. § 21-21-1).

statement about four high school students using drugs on campus.  [R: 856] This reprimand was also placed in Gibson's file, but not disclosed to Gibson at the time. [R:519-520].

(5) Reprimand of June 14, 2010, for failing to immediately come to an "urgent" meeting with the mayor by 9:00 a.m.[3]  [R: 858].

(6) Reprimand of June 14, 2010, and paid suspension from duty for five (5) days for allowing citizens to play basketball in the new community center.[4]  [R: 860].

(7) Reprimand of June 15, 2010, for insubordination for failing to turn in his equipment.  [R: 541-542, 950].  This reprimand was not given to Gibson at the time. [R: 551].

(8) Reprimand of October 7, 2010, for refusing to go to the police station and bring his log book to a Board hearing. This reprimand was not given to Gibson at the time.  [R: 583-584].

(9) Reprimand of October 7, 2010, for "providing false information to the board."  [R: 958].

---

[3]The reprimand was for arriving at 9:28 a.m., rather than 9:00 a.m., the scheduled time. Gibson received notice of this meeting from the Mayor the day before the meeting, June 13, 2010.  On June 14, 2010, Gibson was on his way to the emergency room due to a knee injury, and dispatcher Tosha Henley called to advise that a grant person, whom Gibson and the mayor were supposed to meet, had shown up early and was waiting in Gibson's office.  Gibson then stopped at the police department and met with the grant person.  [R: 523-524].

[4]In fact, the Board had approved the use of the civic center, [R: 534-536], and three of the aldermen had used the civic center the same day.  [R: 755-756; 821-822; 537-538].

4

On June 16, 2010, Kilpatrick suspended Gibson with pay. [R: 952]. At a specially-called meeting in July 2010, Alderman John Smith stated that, "[T]his whole thing is interfering with the chief's work and is costing the city money," and it is "about the mayor having something against the chief." [R: 953].

On December 1, 2010, Gibson filed this suit against Kilpatrick individually, alleging both a violation of the First Amendment, and a state law claim for intentional interference with employment. [R: 512-516]. Gibson's counsel noticed the depositions of three aldermen on September 6, 2011. [R: 960-965].

Thirty (30) days later, on October 5, 2011, Kilpatrick wrote Gibson that the Board had "unanimously" decided to end his employment. [R: 1104]. On November 28, 2011, Gibson filed his supplemental complaint, adding the City of Drew as a defendant, and alleging it had violated his First Amendment rights, by discharging him in retaliation for filing his suit. [R:222-256].

## SUMMARY OF THE ARGUMENTS

In reporting criminal activity of Mayor Kilpatrick to other state and federal law enforcement authorities, Gibson was performing his duty as a citizen. Gibson's speech was "citizen speech" rather than "employee speech," as those terms are used in *Garcetti v. Ceballos*, 547 U.S. 410 (2006). "To hold that an employee's speech is not protected merely because it concerns facts that he happened to learn while at work

would severely undercut First Amendment rights." *Charles v. Grief*, 522 F.3d 508, 513 (5th Cir. 2008).

Whether Gibson's speech was protected First Amendment citizen speech is the only qualified immunity issue for appellate review. Claims that the employment action taken against Gibson by Kilpatrick were not "adverse employment decisions" and claims that there is a lack of adequate proof of causation turn on the existence of material issues of fact. This Court lacks jurisdiction to consider a district court's determination that a material issue of fact exists. *Freeman v. Gore*, 483 F.3d 404, 410 (5th Cir. 2007).

Regarding the cross-appeal, the district court was manifestly wrong to dismiss Gibson's individual claim for malicious interference with employment. The settled law in Mississippi is that even at employee at-will may maintain a cause of action for malicious interference with employment. *Levens v. Campbell*, 733 So.2d 753, 760-761 (Miss. 1999).

Contrary to the district court's dismissal of the state law claim, Mississippi Code Annotated § 11-46-5(2) provides that certain intentional torts, including those for "malice" are not covered by the Mississippi Tort Claims Act. Mississippi does not require that one give notice of a claim to a <u>municipality</u> of a suit against an <u>individual</u> for a malicious act. Under Mississippi law, a notice of claim against a municipality

6

is given to the city clerk.  Miss. Code Ann. § 11-46-11(2)(a)(2).  Giving notice to a

city clerk for a suit against an individual would be both inconsistent with this statute

and illogical.

## ARGUMENT I.

### GIBSON'S REPORTS TO OUTSIDE LAW ENFORCEMENT OFFICERS WERE "CITIZEN SPEECH," CLEARLY PROTECTED BY THE FIRST AMENDMENT.  THUS, KILPATRICK WAS NOT ENTITLED TO QUALIFIED IMMUNITY.

Kilpatrick claims that he is entitled to qualified immunity pursuant to *Garcetti*

*v. Ceballos*, 547 U.S. 410 (2006), and its progeny.  *Garcetti* distinguishes between

citizen speech and employee speech, holding that only citizen speech enjoys full First

Amendment protection.  *Garcetti* explained:

> Ceballos did not act as a citizen when he went about conducting his daily
> professional activities, such as supervising attorneys, investigating
> charges, and preparing filings. In the same way he did not speak as a
> citizen by writing a memo that addressed the proper disposition of a
> pending criminal case. When he went to work and performed the tasks
> he was paid to perform, Ceballos acted as a government employee.

547 U.S. at 422.

The *Garcetti* distinction between protected citizen speech and unprotected

employee speech is manifest when the person involved is reporting a crime.  The duty

to report a crime is not limited to law enforcement officers, but is a requirement for

all citizens.  *See* 18 U.S.C. § 4, making it a crime for one to fail to report known criminal activity.

A law enforcement officer does not, by reason of having the job of enforcing the law, forsake his duty as a citizen to report a crime.  The Supreme Court has stated that "[i]t is the duty and the right, not only of every peace officer of the United States, but of every citizen to assist in prosecuting, and in securing the punishment of, any breach of the peace of the United States."  *In re Quarles*, 158 U.S. 532, 535 (1895).  *See also Lightbourne v. Dugger*, 829 F.2d 1012, 1020 (11th Cir. 1987) ("[a]ll citizens have duty to report criminal activity to appropriate authorities).  Since reporting a crime is a duty of all citizens, Gibson's reporting Kilpatrick for criminal conduct was First Amendment citizen speech, not employee speech, and was, therefore, protected by the First Amendment.

A fundamental reason for the lack of protection given employee speech is the government's interest in promoting the "efficiency of the public service."  *Connick v. Myers*, 461 U.S. 138, 157 (1983).  When a police chief reports a mayor for carrying on criminal activity, the mayor's retaliatory response cannot somehow be related to protecting the "efficiency of the public service."  The speech of the chief of police in reporting criminal activity does not interfere in the "efficiency of the public service."  Rather, it promotes the "efficiency of the public service."

8

The district court appropriately cited *Davis v. McKinney*, 518 F.3d 304, 313 (5th Cir. 2008), which contains facts much like those in the case at bar.  In *Davis*, this Court held the plaintiff's complaints to external law enforcement officers were protected by the First Amendment to the United States Constitution.  *Accord, Thomas v. City of Blanchard*, 548 F.3d 1317 (5th Cir. 2008) (Reports made outside the chain of command are outside *Garcetti's* definition of employee speech and are citizen speech.); *Foraker v. Chaffinch*, 501 F.3d 231 (3rd Cir. 2007) (Complaints made within the chain of command are pursuant to official duties); *Freitag v. Ayers*, 468 F.3d 528 (9th Cir. 2006) (Speech made within the chain of command is different from speech made outside the chain of command).

This case involves one of the highest duties of a citizen, reporting criminal activity.  It is a far cry from the work-required report concerning whether or not a police officer made an error of giving a description for a search warrant, such as was involved in *Garcetti*.  It is far removed from a mere complaint about allegedly unfair work conditions involved in *Connick v. Myers*, 461 U.S. 138, 157 (1983).  It is at least as important to the public interest as complaints about expenditures of taxpayer money involved in *Pickering v. Board of Education of Township High School Dist. 205*, 391 U.S. 563, 568 (1968).  It is of far more public importance than speech wishing physical harm or death to the President of the United States involved in *Rankin v.*

*McPherson*, 483 U.S. 378 (1987).  In accordance with these precedents, it is clearly-protected citizen speech.

## ARGUMENT II.

### EXCEPT FOR DEFENDANT'S CLAIM THAT GIBSON'S SPEECH WAS NOT FIRST AMENDMENT PROTECTED CITIZEN SPEECH, KILPATRICK'S REMAINING ARGUMENTS ARE NON-APPEALABLE FACTUAL DISPUTES.

Generally, this Court has jurisdiction over only "final decisions" of the district courts.  28 U.S.C. § 1291.  *Mitchell v. Forsyth*, 472 U.S. 511, 527 (1985), however, established that a district court's denial of qualified immunity, based upon an issue of law, is immediately appealable under the collateral order doctrine.  In the qualified immunity context, this Court has jurisdiction to review only issues of law, not the existence of fact issues.  *Petta v. Rivera*, 143 F.3d 895, 898-899 (5th Cir. 1998).  This Court lacks jurisdiction to consider an interlocutory appeal challenging whether there exists a genuine issue of fact.  *Colston v. Barnhart*, 146 F.3d 282, 284 (5th Cir. 1998).

First, Defendant challenges whether there was any causal connection between employment actions taken against Gibson in the exercise of his free speech.  Issues of causation are classical factual issues.  *Gracyalny v. Westinghouse Electric Corp.*, 723 F.2d 1311 (7th Cir. 1983).

The district court found circumstantial evidence of "causal connection," noting

that "Gibson was reprimanded for activity that appears to have been condoned by the Mayor and Board," and that there were "other instances of employee indiscretion" [where other employees were left undisciplined]. [R: 1206]. The district court cited several examples of serious employee misconduct which were not the subject of any disciplinary action, [R: 1206], while Gibson was repeatedly reprimanded for non-offenses. According to the district court, "Mayor Kilpatrick's reprimands often involved relatively blameless shortcomings, i.e., showing up late to a meeting for which Gibson had little, if any, notice and for which he was late due to a medical emergency." [R: 1210-1211]. While Kilpatrick reprimanded Gibson for planning a luncheon at the community center, Kilpatrick himself had been shooting basketball in the community center "a week or two" prior, and referred to the luncheon as a "good deed." [R: 1211]. The district court made it plain that it was basing its opinion in this issue on genuine issues of fact, by stating, "However valid the Mayor's reprimands and directives may have been, enough evidence in the record exists to question the motives of such." [R: 1211].

Given the bizarre treatment being afforded to Gibson, given the lack of any similar treatment to other employees, and given the opinion of the board members about some ongoing vendetta against Gibson, the district court properly ruled that whether there was a causal connection between Gibson's reports of criminal activity

11

and Kilpatrick's bizarre treatment of him, was an issue of material fact.

Similarly, there are issues of material fact as to whether Mayor Kilpatrick's actions were materially adverse employment actions. The most significant authority dealing with this issue, of course, is *Burlington Northern & Sante Fe Ry. Co. v. White*, 548 U.S. 53 (2006). In the context of a Title VII retaliation claim, *Burlington Northern* specified that the anti-retaliation provisions of Title VII apply only to materially adverse employment actions, and specified that whether such actions were materially adverse is, in general, a fact question. The Supreme Court said: "In our view, a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, "which in this context means it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" 548 U.S. at 68.

By making the abstract argument that a mere "reprimand" is not an adverse employment action, Kilpatrick draws inferences from the evidence in his own favor. A jury is not required to isolate each reprimand and find that a single reprimand, standing by itself, would constitute an adverse employment action. A jury could find an adverse employment action based on the huge number of reprimands, based on the fact that they were bizarre, and based on the fact that the reprimands were given by a mayor who had no lawful authority under state law to control the operation of the

12

police department.  All of these facts would permit a jury to infer that Kilpatrick was engaged in a pattern of behavior designed to force Gibson from office.

Kilpatrick argues that the *Burlington Northern* Title VII retaliation standard does not apply in a First Amendment retaliation case.  He claims that in the First Amendment context, this Court should continue to apply the "ultimate employment decision" standard, which was rejected in *Burlington Northern* as to Title VII claims.

Obviously, rejecting such a far-fetched distinction, this Court has held that the test of whether a particular act was constitutionally protected activity is whether or not it would "chill a person of ordinary firmness from continuing to engage in that activity."  *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002).  An employee who endures a pattern of bizarre writeups, with the apparent view of getting rid of him may be found by a jury to have suffered actions that would "chill a person of ordinary firmness from continuing to engage in that activity."  *Id.* Gibson has, therefore, met the First Amendment standard set out in *Keenan*.

In any event, as the district court correctly cited *Breaux v. City of Garland*, 205 F.3d 150, 157 (5th Cir. 2000), and *Pierce v. Texas Dept. of Criminal Justice, Inst. Div.*, 37 F.3d 1146, 1149 (5th Cir. 1994), as holding reprimands may be adverse employment decisions.

Finally, Kilpatrick's reliance upon the fact that Gibson did not learn about some

13

of the baseless reprimands until discovery in this case is of no significance. Kilpatrick cites no rule that says that a First Amendment claim becomes inactionable because Gibson did not learn about some of it until after suit was filed. The fact that Kilpatrick continued to reprimand Gibson even after the suit was filed is further evidence of an intent to engage in a pattern of retaliatory acts, so as to force Gibson from his employment.

## CROSS-APPEAL

## THE DISTRICT COURT ERRONEOUSLY DISMISSED GIBSON'S STATE LAW CLAIM FOR FAILURE TO COMPLY WITH THE MISSISSIPPI TORT CLAIMS ACT.

The district court dismissed Gibson's state law claim against Kilpatrick for failure to comply with the notice required by the Mississippi Tort Claims Act, under Mississippi Code Annotated § 11-46-11(1). The sole authority for doing so was *Clanton v. DeSoto County Sheriff's Dept.*, 963 So.2d 560 (Miss. App. 2007). *Clanton* was a suit in which the plaintiff sued the DeSoto County Sheriff's Department and the sheriff in his official capacity for failure to reinstate him to his employment after the plaintiff had been indicted for a criminal offense but not convicted. The plaintiff's criminal case had not been dismissed on the merits, but because of the passage of the two hundred seventy (270) day time limitation for bringing a case to trial. In this context, the Mississippi Court of Appeals ruled that filing the notice of claim required

14

by the Mississippi Tort Claims Act, Miss. Code Ann. § 11-46-11(1), was required to sue the sheriff <u>in his official capacity</u>.

It is undisputable that Mississippi law requires the filing of a notice of claim under the Mississippi Tort Claims Act as a prerequisite to bringing a tort suit against a government entity; i.e., against an official in his official capacity. Miss. Code Ann. § 11-46-11(1). The Mississippi Tort Claims Act, however, specifies that its provisions do not apply in a suit against an <u>individual</u> who acts with malice. Mississippi Code Annotated § 11-46-5 states:

> (2) For the purposes of this chapter an employee shall not be considered as acting within the course and scope of his employment and a governmental entity shall not be liable or be considered to have waived immunity for any conduct of its employee if the employee's conduct constituted fraud, malice, libel, slander, defamation or any criminal offense other than traffic violations.

Consistent with this statute, controlling Mississippi authorities hold that pre-suit notice is not required when the complaint sues an individual for malicious interference with business relationship. In *Zumwalt v. Jones County Bd. of Supervisors*, 19 So.3d 672, 688 (Miss. 2009), the Mississippi Supreme Court held:

> Tortious interference with business relations and contracts requires proof of malice as an essential element... Therefore, the MTCA does not apply to these torts, and any legal action against a governmental employee for these intentional torts must necessarily proceed against him or her as an individual.

15

> To the extent the chancellor determined that notice was required before pursuing claims of tortious interference with either business relations or contracts, this was error. However, it was harmless error, because, as discussed above, no facts were provided to support such claims [citations omitted].

Similarly, in *Perkins v. Wal-Mart Stores, Inc.*, 46 So.3d 839, 846-47 (Miss. App. 2010), the Mississippi Court of Appeals held: "As malice is an 'essential element' of this claim, the Mississippi Tort Claims Act would not be applicable, and 'any legal action against a governmental employee ... must necessarily proceed against him or her as an individual.'"

Recently, the United States District Court for the Southern District of Mississippi held that the filing of a notice of claim is not necessary for intentional interference with an employment at-will claim brought by a jailer against her supervisor and the county's chief deputy individually. *Bolton v. Forrest County, Miss.*, 2012 WL 6600147 (S.D. Miss. 2012). Because the district court's ruling is in conflict with these authorities, the grant of summary judgment as to the individual defendant should be reversed. According to United States District Judge Sharion Aycock in the case styled *Lofton v. City of West Point, Miss.*, 2012 WL 1135862, 12-13 (N.D. Miss. 2012):

To prove his claim, [plaintiff] must show: (1) the acts were intentional and willful; (2) that they were calculated to cause damages to the plaintiff in his lawful business; (3) that they were done with the unlawful purpose of causing damages and loss, without right or justifiable cause on the part of the defendant; and (4) that the actual loss occurred. *Gibson*, 2007 WL 405043[5], at \*2. "However, 'one occupying a position of responsibility on behalf of another is privileged, within the scope of that responsibility and absent bad faith, to interfere with his principal's contractual relationship with a third person.'" *Morrison*, 798 So. 2d at 574[6] (¶ 24) (quoting *Shaw v. Burchfield*, 481 So. 2d 247, 255 (Miss. 1985)). The Mississippi Court of Appeals has stated "[t]he word 'unlawful' in the third element of the tort is somewhat redundant, as the 'purpose of causing damage and loss' is unlawful when it is 'without right or justifiable cause.'" *Morrison*, 798 So. 2d at 575 (¶ 28). This finding is based on the earliest incarnation of the tort found in *Irby v. Citizens National Bank of Meridian*, 121 So. 2d 118, 119 (1960). As such, the court found that "the bad faith exception to a privilege defense was nothing more than an allowance for suit based on a finding of malice." *Gibson v. Estes*, 2008 WL 3884393, at \*3 (N.D. Miss. Aug. 13 (2008) (citing to *Morrison*, 798 So. 2d at 575); see also *McBride Consulting Service, LLC v. Waste Management of Miss., Inc.*, 949 So. 2d 52, 56 (Miss. Ct. App. 2006) (including the malice definition of prong three). The Morrison court defined malice as "when an intentional act occurs [with] the purpose . . . to cause injury to business without right or good cause. *Morrison*, 798 So. 2d at 575.

Of course, it was for the jury to determine whether Kilpatrick had a good faith, legitimate motive for his repeated writeups and his ultimately causing Gibson to be fired. "[B]ad faith raises an issue of motive. It is not necessary for direct evidence to exist, such as an admission by the defendant that acted in bad faith." *Morrison v.*

---

[5] *Gibson v. Estes*, 2007 WL 405043 (Miss. 2007).

[6] *Morrison v. Mississippi Enterprise for Technology,* 798 So.2d 567 (Miss. App. 2001).

17

*Mississippi Enterprise for Technology, Inc.*, 798 So.2d 567, 575 (Miss. App. 2001).

This case is remarkably similar to *Gibson v. Estes*, 338 Fed.Appx. 476, 477 (5th Cir. 2009). In *Gibson v. Estes*, the plaintiff prevailed on a claim of tortious interference based on evidence that the mayor of Rosedale, Mississippi had caused him to be fired because he had investigated the mayor for wrongdoing. *Gibson v. Estes*, 2008 WL 3884393, *1-2 (N.D. Miss. 2008), aff'm 338 Fed.Appx. 476 (5th Cir. 2009). Here, just as in *Gibson v. Estes*, there is evidence that Kilpatrick caused Gibson to be fired, not because of any poor job performance, but because of the bad faith reason that the plaintiff was reporting Kilpatrick for criminal activity. Just as in *Gibson v. Estes*, this case presented a fact issue for the jury on the plaintiff's state law malicious interference claim.

The district court was in error if it intended to find that there was no sufficient evidence of "malice." Such a holding would be inconsistent with the fact that the district court found there was sufficient evidence that Kilpatrick was motivated by retaliation for exercising First Amendment activities. Furthermore, the record contains evidence of "malice" in the form of a memorandum from a city employee/dispatcher Latosha Henley, which stated:

> THE STATE AUDITORS CAME IN AND MADE HIM [MAYOR KILPATRICK] PAY A LARGE SUM OF MONEY BACK THAT HE HAD PURCHASED IN GAS FROM THE CITY. I SEE AND OTHER

OFFICERS AND DISPATCHERS SEE THAT THE MAYOR IS
CONSTANTLY HARASSING YOU, TRYING TO FIRE YOU OR
MAKE YOU QUIT. THAT IS NOT RIGHT,...

[R: 884].

Similarly, Alderman John Smith testified: "I think it's something between the chief and mayor personally, ...And other people besides the chief is falling down on their job, and ... nothing is said to anybody else." [R: 458]. Further, when asked whether the mayor had a "personal vendetta" against Gibson, Smith responded: "Opinion, yes." [R: 458].

Given the ample evidence of malice in the record, there is no requirement for filing any notice of claim against an individual. The suit for malicious interference with employment is not against a governmental entity. Thus, it would be pointless to send a notice of claim to a governmental entity.

## CONCLUSION

The denial of qualified immunity should be affirmed. The dismissal of the state law claim should be reversed.

19

Respectfully Submitted,

WAIDE & ASSOCIATES, P.A.


BY: */s/ Jim Waide*          
      JIM WAIDE
      MS BAR NO.: 6857


WAIDE & ASSOCIATES, P.A.
ATTORNEYS AT LAW
POST OFFICE BOX 1357
TUPELO, MS  38802
TELEPHONE:  662/842-7324
FACSIMILE:  662/842-8056
EMAIL: waide@waidelaw.com

Attorneys for Appellee/Cross-Appellant

## **CERTIFICATE OF SERVICE**

I, Jim Waide, attorney for Appellee/Cross-Appellant, do hereby certify that I have this day electronically filed the above and foregoing with the Clerk of the Court, utilizing the ECF system, which sent notification of such filing to the following:

Gary E. Friedman, Esq.
Gregory Todd Butler, Esq.
LaToya C. Merritt, Esq.
Phelps Dunbar, LLP
111 East Capitol Street, Ste 600
P.O. Box 23066
Jackson, MS 39225-3066

THIS the 25th day of March, 2013.

*/s/ Jim Waide*
JIM WAIDE

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.     This brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because it contains 4,464 words, excluding the parts exempted by FED. R. APP. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally-spaced typeface using Corel WordPerfect Office X3, in 14-point Times New Roman font (except for footnotes, which are in 12-point Times New Roman font, as permitted by Fifth Circuit Rule 32.1).

3.     The undersigned understands a material misrepresentation in completing this certificate or circumvention of the type-volume limits in FED. R. APP. P. 32(a)(7), the typeface requirements of FED. R. APP. P. 32(a)(5), or the type style requirements of FED. R. APP. P. 32(a)(6) may result in the Court's striking the brief and imposing sanctions against the person signing the brief.

SO CERTIFIED, this the 25th day of March, 2013.

*s/ Jim Waide*
JIM WAIDE
Attorney for Appellee/Cross-Appellant

22